# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

### PACER Cover Sheet
### for Electronically Filed Documents

Any data shown here are current as of  06/13/06    . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:**           Furr's Supermarkets, Inc.

**Case Number:**      01-10779

| Document Information |
|:---:|

| | |
|---|---|
| **Description:** | Memorandum Opinion re: [737-1] Motion for order determining that the director of the New Mexico Alcohol and Gaming Division may not condition approval of the transfer of debtor's liquor licenses upon payment in full to liquor wholesalers by Furr's Supermarkets, Inc. . |
| Received on: | 2001-08-29 09:26:05.000 |
| **Date Filed:** | 2001-08-29 09:26:05.000 |
| **Date Entered On Docket:** | 2001-08-29 00:00:00.000 |

| Filer Information |
|:---:|

**Submitted By:**

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date.  To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
FURR'S SUPERMARKETS, INC.
    Debtor.                      No. 11-01-10779 SA

**MEMORANDUM OPINION ON DEBTOR'S MOTION FOR
ORDER DETERMINING THAT THE DIRECTOR OF
THE NEW MEXICO ALCOHOL AND GAMING DIVISION
MAY NOT CONDITION APPROVAL OF THE TRANSFER
OF DEBTOR'S LIQUOR LICENSES UPON PAYMENT
<u>IN FULL TO LIQUOR WHOLESALERS</u>**

This matter is before the Court on the Debtor in

Possession's Motion for Order Determining that the Director of

the New Mexico Alcohol and Gaming Division May Not Condition

Approval of the Transfer of Debtor's Liquor Licenses upon

Payment in Full to Liquor Wholesalers (docket 737)(the

"Motion") and the objections thereto by the New Mexico Alcohol

and Gaming Division (docket 797), Premier Distributing

Company, Inc., National Distributing Company, Inc., New Mexico

Beverage Company, Inc. and Southern Wine & Spirits, Inc.

(docket 855), Desert Eagle Distributing Company of New Mexico,

L.L.C. (docket 861), and Joe G. Maloof and Company (docket

863). Both the Debtor and Metropolitan Life Insurance Company

("MetLife")filed replies (docket 906 and 905 respectively).

Also before the Court is the Stipulation between the Debtor

and New Mexico Alcohol and Gaming Division in the Contested

Matter Arising from the Motion (docket 793). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (K).

The facts are not in dispute. The Debtor filed a motion seeking approval of the sale of substantially all of its assets to Fleming Companies, Inc. (the "sale motion.") The Debtor owns licenses that permit it to engage in the retail sale of alcoholic beverages in New Mexico (the "liquor licenses.") Under the terms of the Debtor's sale agreement with Fleming, Debtor is obligated to transfer the liquor licenses to Fleming or its designees. The State of New Mexico has filed a proof of claim for prepetition taxes owed by the Debtor. Debtor owes various liquor wholesalers for alcoholic beverages delivered to Debtor. The current state of the record does not indicate the value of any particular license, the dollar amount owed to any particular liquor wholesaler for delivery to any particular licensed premises, or the dates that the debts were incurred.

Debtor's Motion seeks declaratory relief 1) that Section 60-6B-3 is preempted by the United States Bankruptcy Code, 2) that the Director, Department and Division of the New Mexico Alcohol and Gaming Division would violate the automatic stay provisions of the Bankruptcy Code by conditioning a transfer of the licenses on payment of wholesalers' claims, and 3) that

Case 01-10779-sh7   Doc 990   Filed 08/29/01   Entered 08/29/01 12:08:00 Page 3 of 30

the Director would violate the protection against
discriminatory treatment provisions of the Bankruptcy Code by
conditioning a transfer of the licenses on payment of
wholesalers' claims.[1]  The Debtor's Motion is supported by
MetLife, Heller Financial,, Inc., Bank of America, N.A. and
Fleet Capital Corporation, the lenders who extended
postpetition credit to the estate pursuant to the Interim
Order Authorizing Debtor to Incur Post-Petition Financing
(docket 32) and the Final Order Authorizing Debtor to Incur
Post-Petition Financing (docket 241) (together the "DIP
Financing Order").

As discussed below, the Court finds that Section 60-6B-3
is not preempted by the Bankruptcy Code.  The Court further
finds that the declaratory relief requested is barred by the
Eleventh Amendment, and makes other findings as well.

**PREEMPTION**

A. The State law.

The New Mexico statute in question, Section 60-6B-3 NMSA
1978 (1998 Repl.) provides:

> The transfer, assignment, sale or lease of any
> license shall not be approved until the director is
> satisfied that all wholesalers who are creditors of

---

[1] Debtor's Motion does not contest the enforcement of any
other provisions of the Liquor Control Act.  Debtor's Reply,
at 3.  Docket 906.

Page -3-

> the licensee have been paid or that satisfactory
> arrangements have been made between the licensee and
> the wholesaler for the payment of such debts. Such
> debts shall constitute a lien on the license, and
> the lien shall be deemed to have arisen on the date
> when the debt was originally incurred.

A federal court is bound by a state's interpretation of the language of its own statutes and of the legislative intent behind them. <u>Cordova v. Romero</u>, 614 F.2d 1267, 1269 (10th Cir.), <u>cert. denied</u>, 449 U.S. 851 (1980).

The New Mexico Supreme Court construed Section 60-6B-3(E)[2] as creating a lien with "superpriority status over other lienholders" whose liens were unperfected prior to the wholesalers' extension of credit protected by the statute. <u>What D'ya Call It, Inc. v. Sunwest Bank of Albuquerque (In re What D'Ya Call It, Inc.)</u>, 105 N.M. 164, 165, 730 P.2d 467, 468 (1986). Therefore, the Bankruptcy Court must also construe Section

60-6B-3 as creating a superpriority lien vis-a-vis all other prior unperfected lien claimants.

MetLife argues that the lien priority provisions in §60-6B-3 require that the liens of itself, Heller Financial, et al. take priority over any subsequent wholesalers' liens. Metropolitan Life Insurance Company's Reply, at 11-12. Docket

---

[2]The language of former Section 60-6B-3(E) is identical to current Section 60-6B-3.

905.  And even a cursory reading of the second sentence of the
statute and the New Mexico Supreme Court's decision in In re
What D'ya Call It, Inc., 105 N.M. at 165, 730 P.2d , would
seem to support that position.  However, an examination of the
statute, including an examination of the Supreme Court's
decision in In re What D'ya Call It, Inc., and the history of
companion provisions of the statute suggest that the argument
does not obtain for MetLife the result it seeks.

The two sentences of Section 60-6B-3 appear to be
reconcilable.[3]  The first sentence of the statute requires
unconditionally that the wholesalers debts be paid in full as
a condition of transfer.  The second section sets out
priorities for the liens securing such debts based on the date
the debts are incurred.  The Supreme Court's decision in In re
What D'ya Call It, Inc. says that a non-wholesaler lien
"perfected under... applicable general law prior to the date
the licensee incurred debts owed to wholesaler creditors"
would take priority over the wholesalers' liens.  105 N.M. at

---

[3] "Legislative intent is to be determined from the
language used in the statute as a whole, and each section
should be construed in connection with every other section to
reconcile different provisions to make them consistent.  State
v. Sinyard, 100 N.M. 694, 675 P.2d 426 (Ct. App. 1983), cert.
denied, 100 N.M. 689, 675 P.2d 421 (1984)."   D & M, Inc. v.
United New Mexico Bank at Gallup (In re D & M, Inc.), 114 B.R.
274, 277 (Bankr. D.N.M. 1990).

Page  -5-

165, 730 P.2d at 468.[4]  Assuming sale proceeds sufficient to pay the wholesalers' claims in full plus all other liens, the second sentence of the statute does not come into play, since if all claims are being paid, their priority makes little difference.  The first sentence would still be operative, since it requires payment in full on transfer.  But assuming insufficient funds to pay the wholesalers and all other liens, then either the transfer does not take place at all, or perhaps the license is transferred subject to some remaining liens but with the wholesalers paid in full.  In short, if there is a shortfall in sale proceeds, but there are enough funds to pay the wholesalers in full at transfer, the transfer may or may not take place.  But if there are insufficient funds to pay the wholesalers in full at transfer (and assuming no other "satisfactory arrangements" are reached), there will be no transfer.

The Supreme Court's decision in <u>In re What D'ya Call It, Inc.</u> does not explicitly address the possibility of a shortfall in proceeds.  The decision uses the term

---

[4] "A lien pursuant to Section 60-6B-3(E) has a superpriority status over other lienholders, including the tax <u>lien</u> in favor of the State, unless the latter <u>liens</u> were perfected under Section 7-1-38 or under applicable general law prior to the date the licensee incurred debts owed to wholesale creditors."  105 N.M. at 165, 730 P.2d at 468. (Emphasis added.)

Page -6-

"superpriority", but in contrast to that term's commonly accepted meaning in a bankruptcy context[5], the term as used in <u>In re What D'ya Call It, Inc.</u> appears merely to refer to the fact that a wholesaler's lien need not be recorded to be effective against the world.  105 N.M. at 165, 730 P.2d at 468.  Thus any suggestion in <u>In re D & M, Inc.</u>, 114 B.R. at 278, that the term "superpriority" means that the wholesalers' liens are prior to a non-wholesaler lien "perfected under...applicable general law prior to the date the licensee incurred debts owed to wholesaler creditors", 105 N.M at 165, 730 P.2d at 468, would probably not be correct.

A partial history of a related statute, §60-7A-9, illustrates that the transfer provisions in the first sentence of §60-6B-3 very much reflect the intent of the legislature. <u>New Mexico Beverage Co. v. Blything</u>, 102 N.M. 533, 697 P.2d 952 (1985) started as a district court ruling holding, reasonably enough, that the provisions of the Thirty-Day Credit Law as it then existed meant that a wholesaler could not collect payment on transfer (or any other time) for sales made when one or more invoices were more than thirty days

---

[5] <u>See, e.g.,</u> <u>In re Life Imaging Corporation</u>, 131 B.R. 174, 177 (Bankr. D. Co. 1991)(discussing Section 507(b).)

due.[6]  By the time that the case was decided by the New Mexico
Supreme Court in April 1985, the legislature had changed the
statute to ensure that even those debts incurred in violation
of the Thirty-Day Credit Law must be paid in full at transfer.
See In re D & M, Inc., 114 B.R. at 277.[7]

And, as the New Mexico Supreme Court made clear in In re
What D'ya Call It, Inc., the unrecorded wholesalers' liens
even take priority over unrecorded state tax liens.  105 N.M.
at 165, 730 P.2d at 468.

In summary, it may well be that MetLife and the other
lenders have liens that have priority over some or all of the

_____

[6] Section 60-8A-5 NMSA 1978 (1998 Repl.) provided, and
still provides, that "no action shall be maintained...to
collect any debt for merchandise sold, served or delivered in
violation of the Liquor Control Act."

[7] The effective date of the statute's amendment was June
14, 1985.  As amended, the statute, §60-7A-9 NMSA 1978 (1998
Repl.), now reads (with the amending language emphasized):
     Credit extension by wholesalers.
     It is a violation of the Liquor Control Act for any
     wholesaler to extend credit or to agree to extend
     credit for the sale of alcoholic beverages to any
     retailer, dispenser, canopy licensee, restaurant
     licensee, club licensee or governmental licensee or
     its lessee for any period more than thirty calendar
     days from the date of the invoice required under the
     provisions of Section 60-8A-3 NMSA 1978.  A
     violation of this section does not bar recovery by
     the wholesaler for the total indebtedness of the
     retailer, dispenser, canopy licensee, restaurant
     licensee, club licensee or governmental licensee or
     its lessee.

liens of the wholesalers.  Nevertheless, if the transfers are to take place, the wholesalers' liens must be paid, in full, regardless of what happens with those or any other liens. §60-6B-3 NMSA 1978 (1998 Repl).

The Court also makes some additional observations. First, Section 60-6B-3 does not apply only to bankruptcy debtors or insolvents; it applies to all licensees without reference to financial condition.  Second, as noted, the statute demonstrates a strong legislative policy that wholesalers be paid before any license can be transferred; the statute establishes a priority in payment for one particular group of creditors (wholesalers) in one asset (the license).[8] Finally, the Court finds that the lien created by Section 60-6B-3 is a "statutory lien" as defined by Bankruptcy Code section 101(53).[9]

B.  Pre-emption standards.

Our cases have established that state law is pre-empted under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, in three circumstances.  First, Congress can define explicitly the extent to which

_____

[8] Inquiries about whether giving the wholesalers such favored treatment is good policy, or how that policy came to be enacted, is of course not the business of this Court.

[9] Statutory liens can be set aside if they become effective upon the debtor's insolvency or an equivalent event. 11 U.S.C. §545(1).  Section 60-6B-3 is effective regardless of the debtor's financial status.

its enactments pre-empt state law.  Pre-emption
fundamentally is a question of congressional intent,
and when Congress has made its intent known through
explicit statutory language, the courts' task is an
easy one.

Second, in the absence of explicit statutory
language, state law is pre-empted when it regulates
conduct in a field that Congress intended the
Federal Government to occupy exclusively.  Such an
intent may be inferred from a "scheme" of federal
regulation ... so pervasive as to make reasonable
the inference that Congress left no room for the
States to supplement it," or where an Act of
Congress "touch[es] a field in which the federal
interest is so dominant that the federal system will
be assumed to preclude enforcement of state laws on
the same subject.  Although this Court has not
hesitated to draw an inference of field pre-emption
where it is supported by the federal statutory and
regulatory schemes, it has emphasized: "Where ...
the field which Congress is said to have pre-empted"
includes areas that have "been traditionally
occupied by the States," congressional intent to
supersede state laws must be 'clear and manifest.'"

Finally, state law is pre-empted to the extent
that it actually conflicts with federal law.  Thus,
the Court has found pre-emption where it is
impossible for a private party to comply with both
state and federal requirements, or where state law
"stands as an obstacle to the accomplishment and
execution of the full purposes and objectives of
Congress."

English v. General Electric Company, 496 U.S. 72, 78-79, 110

S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990)(citations omitted.)


1.  The Bankruptcy Code does not explicitly preempt a state's
    rights to establish statutory liens.

No party argues that the Bankruptcy Code explicitly

preempts a state's right to establish statutory liens.

Page -10-

Indeed, one of the fundamental principles in bankruptcy is that the Bankruptcy Code looks to state law definitions of property and interests in property.  See Butner v. United States, 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-18 (1979):

> Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.  Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.  Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."  Lewis v. Manufacturers National Bank, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323.  The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

(Footnote omitted.)  See also Barnhill v. Johnson, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389 (1992)("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law.")(citations omitted.); Paul v. Monts, 906 F.2d 1468, 1475 (10th Cir. 1990)(Bankruptcy Code defines what interests of the debtor may become property of the estate, but nonbankruptcy law defines the scope and existence of those interests.)(citing California v. Farmers

Case 01-10779-sh7   Doc 990   Filed 08/29/01   Entered 08/29/01 12:08:00 Page 12 of 30

<u>Markets, Inc. (In re Farmers Markets</u>), 792 F.2d 1400, 1402 (9th

Cir. 1968)).

2.  <u>The Bankruptcy Code does not occupy the field of debtor
    creditor relations to the exclusion of state created
    statutory liens.</u>

In general, the Bankruptcy Code preempts state law but

only to the extent that the state law conflicts with federal

law.  <u>Paul v. Monts</u>, 906 F.2d 1468, 1475 (10th Cir. 1990).

"The underlying creditors' rights asserted in bankruptcy

proceedings are creatures of state law."  <u>Id.</u> (<u>citing</u> <u>In re</u>

<u>Elcona Homes Corp.</u>, 863 F.2d 483, 486 (7th Cir. 1988)).

Because preemption is partial, "it cannot be said that

Congress has intended to 'occupy the field' leaving nothing to

state law."  <u>Id.</u>

Specifically, nothing in the Bankruptcy Code suggests

that it was intended to so occupy the field of debtor-creditor

relations that it would preempt state statutory liens.  <u>Artus</u>

<u>v. Alaska Department of Labor (In re Anchorage International</u>

<u>Inn, Inc.)</u>, 718 F.2d 1446, 1451 (9th Cir. 1983)("No statutory

bankruptcy policy forbids a state from giving one creditor a

greater right to payment of his claim from a given asset than

that conferred on another.")  In fact, Bankruptcy Code Section

Case 01-10779-sh7    Doc 990    Filed 08/29/01    Entered 08/29/01 12:08:00 Page 13 of 30

545 recognizes the existence of statutory liens created under state law.[10]

### 3. New Mexico's Section 60-6B-3 does not conflict with the Bankruptcy Code or stand as an obstacle to the Code's full purposes.

Section 60-6B-3 operates independently from the Bankruptcy Code. If a Trustee or Debtor in Possession seeks to transfer a liquor license, the wholesalers must be paid in full. The net proceeds from the sale, after paying the wholesalers, go to the bankruptcy estate for distribution pursuant to the priorities set out in the Code. D & M, Inc., 114 B.R. at 276-77. See also Sulmeyer v. California Department of Employment Development (In re Professional Bar Co., Inc.), 537 F.2d 339, 340 (9th Cir. 1976)(Bankruptcy estate contains net value of liquor license after satisfaction of state's claims.) The transferor can comply with both statutes. Compare Moldo v. Matsco, Inc. (In re Cybernetic Services, Inc.), 252 F.3d 1039, 1045 (9th Cir. 2001)("State law

_____

[10] "[W]hen a state-created entitlement is enforceable inside and outside bankruptcy, 'there is no reason stemming from the justifications underlying condemnation of state-created priorities ... to refuse recognition of the entitlement' in the bankruptcy situation." In re Anchorage International Inn, Inc., 718 F.2d at 1450, n. 3, quoting Jackson, Bankruptcy and the Creditors' Bargain, 91 Yale L.J. 857, 905-06 (1982). (Emphasis in original.) "All state-created entitlements act in favor of some group of creditors, but bankruptcy law generally recognizes them nonetheless." Id.

also is preempted 'when compliance with both state and federal law is impossible.'") (citation omitted.)

One underlying policy of the Bankruptcy Code is equal treatment of similarly situated creditors. Debtor's main argument is that Section 60-6B-3 upsets this equal treatment by elevating the wholesalers into a superpriority position, thereby frustrating the goals of the Bankruptcy Code[11]. However, under New Mexico law, the wholesalers are not in the same class as other creditors. Accord Anchorage International Inn, 718 F.2d at 1452 ("Creditors who hold prior rights under the Alaska statute [requiring payment of creditors of liquor establishment before transfer of liquor license] are simply not in the 'same class' as other creditors.") The legislature has, essentially, said that liquor wholesalers are in a favored position under New Mexico law. Nothing prevents a state from creating favored classes of creditors. Therefore,

_____

[11] This was also the argument in California v. Farmers Markets, Inc. (In re Farmers Markets, Inc.), 792 F.2d 1400, 1403 (9th Cir. 1986)(California statute on liquor license transfer "could arguably be cast as inconsistent with the bankruptcy process because parties claiming under it may fare better in bankruptcy than they would if there were no such statute. Yet this argument confuses the classification of an interest with the displacement of the Code's priority scheme. To classify what might otherwise be a lesser claim as a proprietary interest does not displace the priority provisions. It merely reclassifies an interest within that scheme.")

application of Section 60-6B-3 is not offensive to the
operation of the Bankruptcy Code.  There is no conflict, and
no preemption.

**ELEVENTH AMENDMENT**

The Eleventh Amendment provides:

The Judicial power of the United States shall not be
construed to extend to any suit in law or equity,
commenced or prosecuted against one of the United
States by Citizens of another State, or by Citizens
or Subjects of any Foreign State.

U.S. Const. amend. XI.  The Eleventh Amendment also extends to
suits against States by its own citizens.  Seminole Tribe of
Forida v. Florida, 517 U.S. 44, 54 (1996); Chandler v.
Oklahoma (In re Chandler), 251 B.R. 872, 875 (10th Cir. B.A.P.
2000) (citing Hans v. Louisiana, 134 U.S. 1, 10 (1890)).

Bankruptcy Code section 106 deals with waiver of
sovereign immunity.  To the extent section 106 is based on
Article I of the Constitution, it is probably ineffective to
waive a state's sovereign immunity.  Board of Trustees of the
University of Alabama v. Garrett, __ U.S. __, 121 S.Ct. 955,
962 (2001)("Congress may not, of course, base its abrogation
of the States' Eleventh Amendment immunity upon the powers
enumerated in Article I."); Thompson v. Colorado, ___ F.3d
___, 2001 WL 883305 at 3 (10th Cir. 2001) ("After Seminole
Tribe, [517 U.S. 44 (1996)], only Section Five of the

Page -15-

Fourteenth Amendment stands as a recognized source of power by which Congress can abrogate Eleventh Amendment immunity.") Furthermore, Section 106(a) has been declared unconstitutional by the Bankruptcy Appellate Panel for the Tenth Circuit. <u>Straight v. Wyoming Department of Transportation (In re Straight)</u>, 248 B.R. 403, 421 (10th Cir. B.A.P. 2000). Section 106(b), however, may have continuing vitality as a codification of <u>Gardner v. New Jersey</u>, 329 U.S. 565 (1947), which held that a state can partially waive its immunity by filing a claim in a bankruptcy. <u>Wyoming Department of Transportation v. Straight (In re Straight)</u>, 143 F.3d 1387, 1390, 1392 (10th Cir.), <u>cert. denied</u>, 525 U.S. 982 (1998). That section provides:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(b).

In <u>Straight</u> the Tenth Circuit addressed the language "arose out of the same transaction or occurrence" and noted that it followed the language of Fed.R.Civ.P. 13(a) dealing with compulsory counterclaims. <u>Straight</u>, 143 F.3d at 1391. In this case, Debtor's Motion attempts to force the Director

Case 01-10779-sh7   Doc 990   Filed 08/29/01   Entered 08/29/01 12:08:00 Page 17 of 30

to transfer liquor licenses without the Debtor's payment of wholesalers. This does not appear to be even remotely related to the State's proof of claim for pre-petition tax liabilities[12]. The Motion is not a counterclaim to the proof of claim, and Section 106(b) does not apply. Nor will the Court treat as a waiver the State's appearance at the hearing on the approval of the sale to Fleming, through its Taxation and Revenue Department counsel who announced that the State would not seek to block the sale but would assert a claim against the sale proceeds. In summary, the Court cannot find that the State waived its immunity or consented to suits related to its role as overseer of the state's liquor laws.[13]

The remaining question is whether the Debtor's motion is a "suit" to which the Eleventh Amendment applies. "The overwhelming view is that an adversary proceeding that names a

---

[12] Debtor argues that under <u>Straight</u>, 143 F.3d at 1392, it is sufficient if the claim against the state and the state's claim both arise from operation of the "debtor's business". This is too broad a reading of <u>Straight</u>. The Straight Court found "sufficient evidence to remove all doubt that the filings of its [the state's] proofs of claim against the Chapter 13 case were linked to the decertification which prompted Ms. Straight's initial action." <u>Id.</u> at 1391. There was in fact a much greater nexus than just "Debtor's business."

[13] The State's appearance in this action to defend its Eleventh Amendment position obviates the need to rule on whether the wholesalers have standing to argue the State's Eleventh Amendment position.

Page -17-

State as a defendant and summons it to appear in federal court is a suit for Eleventh Amendment purposes." <u>Chandler</u>, 251 B.R. at 875. The rationale behind the "adversary proceeding" rule is 1) the State is subjected to the "indignity" of a required appearance in a judicial tribunal, citing <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. at 58, and 2) the Bankruptcy Court exercises <u>in personam</u> jurisdiction over the state resulting in a decision that binds the State. <u>Id.</u> at 876. In dicta, the <u>Chandler</u> Court recognized that some cases find that contested matters are not "suits" when monetary recovery or dispossession of assets from a State are not sought.[14] <u>Id.</u> at 876. This limitation on the definition of a suit is undesirable because it puts form over substance. <u>Id.</u> at 877.

The Debtor in this case is proceeding by way of a motion rather than an adversary proceeding. The motion, although phrased in terms of requesting a declaration that the Director and State would be in violation of the Bankruptcy Code if the Director failed to transfer the liquor licenses, is essentially seeking to compel the Director and State to

---

[14] The Eleventh Amendment precludes "suits in law or equity." This contested matter essentially seeks injunctive relief against the State, indisputably a cause of action in equity.

Page -18-

transfer the licenses.  This relief, however, is substantially
the type obtained by way of an adversary proceeding.  See
Federal Bankruptcy Rule 7001:

> An adversary proceeding is governed by the rules of
> this Part VII.  The following are adversary
> proceedings: ...
> (7) a proceeding to obtain an injunction or other
> equitable relief ... [or]
> (9) a proceeding to obtain a declaratory judgment
> relating to any of the foregoing...

This "motion" is subjecting the state of New Mexico to the
"indignity" of an appearance in Bankruptcy Court, and is
attempting to bind the State with its ruling.  Compare Idaho
v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 281
(1997)(Tribe's suit was the "functional equivalent" of a quiet
title action against the state.)  Based on the foregoing,
especially the role of the Director in overseeing the state's
liquor laws, the Court finds that the Debtor's Motion is an
impermissible "suit" within the contemplation of the Eleventh
Amendment.

The Court also finds that Ex parte Young, 209 U.S. 123
(1908) does not apply.  "Under the Ex parte Young doctrine,
'the Eleventh Amendment generally does not bar a suit against
a state official in federal court which seeks only prospective
equitable relief for violations of federal law, even if the
state is immune.'" Hart v. Valdez, 186 F.3d 1280, 1286 (10th

Cir. 1999)(Citations omitted.)  First, the Court finds that
Section 60-6B-3 is a valid state property law and its
enforcement by the Director is not a violation of federal
law.[15]  Second, the Eleventh Amendment bars a suit against
state officials when the state is the real, substantial party
in interest.  Pennhurst State School & Hospital v. Halderman,
465 U.S. 89, 101 (1984)(Citations omitted.)  "The general rule
is that a suit is against the sovereign if 'the judgment
sought would expend itself on the public treasury or domain,
or interfere with the public administration,' or if the effect
of the judgment would be 'to restrain the Government from
acting, or to compel it to act.'"  Id. at n.11 (quoting Dugan
v. Rank, 372 U.S. 609, 620 (1963)).  Debtor is attempting to
force the state to act to permit transfer of the liquor
licenses.  The State of New Mexico is the real party in
interest, and therefore Ex parte Young does not apply.

**RIPENESS**

Debtor's motion, paragraphs 8(b) and (c), ask the Court
to declare that the Director of the New Mexico Alcohol and

---

[15] "The Young doctrine recognizes that if a state official
violates federal law, he is stripped of his official or
representative character and may be personally liable for his
conduct; the state cannot cloak the officer in its sovereign
immunity."  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. at
288 (Justice O'Connor, concurring in part and concurring in
the judgment) (citing Ex parte Young, 209 U.S. at 159-160).

Page -20-

Gaming Commission would be in violation of Bankruptcy Code sections 362 and 525 respectively "if the Director were to condition his approval of the transfer of the Liquor Licenses to Purchaser or its designees upon payment in full to the Liquor Wholesalers."  The Debtor does not allege that it has asked the Director to make any transfer, or that the Director has refused to make a transfer.

Federal courts cannot grant declaratory relief unless a controversy exists.  Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 272, 61 S.Ct. 510, 512 (1941). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Id. at 273, 61 S.Ct. at 512.

However, in this instance the Director entered into a stipulation (docket 793) with the Debtor which provides, at 2, as follows:

> The Division will abide by and comply with the Court's decision in this Contested Matter, without the necessity of the Debtor commencing an adversary proceeding or obtaining an injunction to enforce the decision, and without the necessity of the Court ordering the Division to so comply.

Without deciding whether an assistant attorney general or, for that matter, the Director has the requisite authority to waive the State's Eleventh Amendment immunity in part or in whole, the Court is clear that the effect of the stipulation is to present a substantial controversy to this Court with sufficient immediacy and reality to warrant a ruling from the Court. In addition, courts generally have tended to find ripeness when the issues presented for decision are purely or mostly legal, as is the case here. See In re Space Building Corporation, 206 B.R. 269, 272 (D. Ma. 1996)("For an issue to be appropriate for judicial review, it should be 'purely legal' and 'final'.")(quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 152, 87 S.Ct. 1507, 1517 (1967)).

**TWENTY-FIRST AMENDMENT**

The Debtor argues, and MetLife concurs, that "no genuine argument can be made that Section 60-6B-3 is anything but a statue with the sole purposes of aiding private debt collection." Debtor's Memorandum in Support of Debtor's Motion, at 24, n. 24. Docket 773. Indisputably §60-6B-3 is a debt collection provision. However, the same can be said of state statutes that create lien priorities, provide for the

Case 01-10779-sh7    Doc 990    Filed 08/29/01    Entered 08/29/01 12:08:00 Page 23 of 30

establishment and enforcement of liens, etc.[16] <u>See</u> above at note 10. The mere fact that the statute aids private debt collection does not make it run afoul of the Bankruptcy Code. Particularly is this the case when the statute is part of the state law that applies to all such transactions, regardless of whether the debtor is in bankruptcy or not, and thus requires compliance pursuant to 28 U.S.C. §959(b). Thus, the Court need not decide whether the statute is an integral part of the exercise of the State's Twenty-First Amendment rights.

## WAIVER BY WHOLESALERS

28 U.S.C. §959(b) requires the estate to comply with the provisions of state law. Section 60-6B-3 is one of those laws. The provisions of the DIP Financing Order do not constitute sufficient grounds to disregard state law. Further, the DIP Financing Order and related notices sought to ensure that MetLife and the other lenders had a priority for their liens. Nothing in the order or the notices announced an intention to override state law. And finally, if MetLife and the other

---

[16] "State law often vests some creditors with special rights, sometimes called 'liens' or 'security interests,' that enable certain creditors to collect ahead of general creditors in bankruptcy. The inherent purpose of <u>any</u> such lien of incumbrance is to give the holder of the lien a position superior to other creditors in a particular asset." <u>In re Anchorage International Inn, Inc.</u>, 718 F.2d at 1450, n. 3. (Emphasis in original.)

Page -23-

lenders sought to determine the validity, priority or extent of the wholesalers' liens, they may have needed to bring an adversary proceeding against the wholesalers to accomplish that. The provisions of Federal Bankruptcy Rule 7001(2) make it clear that the "negative notice" process employed in obtaining approval for the DIP Financing Order is insufficient to void validly existing liens such as these.

A wholesaler can waive a lien or some other protection to which it is entitled. See In re D & M, Inc., 114 B.R. at 277 (by their actions of agreeing to a sale free of liens with proceeds going into escrow, wholesalers waived argument whether §60-6B-3 creates a condition precedent to the transfer of the license). And MetLife argues vigorously that at least two wholesalers, Desert Eagle and Joe G. Maloof, waived the priority of their lien rights by failing to timely object to the entry of the DIP Financing Order.[17] Metropolitan Life Insurance Company's Reply, at 5-8. Whatever waiver may have occurred with respect to lien priorities generally by these two wholesalers, it is clear that none of the six wholesalers involved in this contested matter knowingly and voluntarily

---

[17] It appears that MetLife tacitly concedes that Premier Distributing Company, Inc., National Distributing Company, Inc., New Mexico Beverage Company, Inc. and Southern Wine & Spirits, Inc. all timely filed objections and have not waived any of their rights.

waived the right to be paid in full on transfer of the licenses. As in <u>Wedgewood Investment Fund v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.)</u>, 878 F.2d 693, 698-99 (3rd Cir. 1989), cited by MetLife, nothing that the lenders did would have put the wholesalers on notice that they were giving up their rights to be paid on transfer, and thus Desert Eagle's and Maloof's failure to act can not be construed as a waiver. And to the extent that the claims of Desert Eagle and Maloof all predate the filing of the chapter 11 petition and therefore of any notice of the DIP Financing Order, as is stated in MetLife's Reply at 8 (docket 905), they cannot be said to have waived the priority of their claims.

**REMAINING ISSUES**

Wholesalers' claims entitled to be paid, or to be addressed by "satisfactory arrangements", include invoices for alcoholic beverages delivered by the wholesalers, even if such deliveries occurred after the effective date of the Debtor-in-Possession financing order and even if the deliveries violated the thirty-day rule set out in NMSA 1978, §60-7A-9. <u>In re D & M, Inc.</u>, 114 B.R. at 278. Obviously, such claims would not include invoices for alcoholic beverages not delivered.

Page -25-

Presumably if the estate has set aside funds covering all
the wholesalers' claims for product delivered[18], and is
prepared to deliver those funds during the ordinary course of
a closing of the license transfers, the Director would find
that the wholesalers "have been paid" by these arrangements,
or at least that these are "satisfactory arrangements".[19]  The
Court will therefore order that the wholesalers provide the
correct figures to the estate no later than Thursday, August
30, at 9.00 pm (Mountain Time), and such additional
information as the Debtor and others may request, to ensure
that the estate has the time and documentation to confirm that
the figures are correct prior to any closing activities on
Friday, August 31.  To the extent that the wholesalers have
already provided the requisite information, they need not
provide it again.  Based at least on a previous hearing at

_____

[18] Setting aside sufficient funds for payment at closing
to cover the value of a license, as suggested by MetLife in
its Reply at 8-9, if that sum is less than the total of the
wholesalers' liens, would not be in compliance with the
statute.

[19] The Director objects to the proposed escrow agreement
because "it suffers [sic] the Wholesalers to the vagaries of
the pending adversarial proceeding, and allows for the
possibility that the licenses will be transferred to other
creditors... without payment of the liens."  AGD Memorandum,
at 5-6.  Docket 797.  Nothing in §60-6B-3 suggests it is
intended to insulate wholesalers from litigation to establish
their claims.  However, the statute does directly attempt to
ensure payment of the liens before or at transfer.

Case 01-10779-sh7    Doc 990    Filed 08/29/01    Entered 08/29/01 12:08:00 Page 27 of 30

which the Court ordered the exchange of documentation and information between the wholesalers and the lenders, the deadline set by the Court in this memorandum opinion and order for the wholesalers to deliver any remaining undelivered information should not be a burden on the wholesalers.  The Court of course retains jurisdiction over the parties, including the wholesalers, to deal promptly with the potential issue of any overpayment to the wholesalers.

Finally, during the course of much of the briefing period for this contested matter, the Court was prohibited from ruling on issues concerning Heller Financial because of a potential financial interest.  Canon 4(C)(1)(c) of the Code of Conduct for United States Judges; 28 U.S.C. §455(b)(4).  The Court has now divested itself of the financial interest. Heller may want to (re)argue the "waiver" issue, particularly in light of its motion for summary judgment on that ground, among others, in the pending adversary proceeding styled and numbered Premier Distributing Company, Inc. v. Heller Financial, Inc., No. 01-1073.  Should Heller file a motion for rehearing or for similar relief, the Court's ruling requiring full payment of the wholesalers' liens as a condition to transfer will remain in effect until further order of the Court.  (That was, after all, the status quo when the Debtor

filed its motion.)  The Court's continuing jurisdiction over the wholesalers ensures that such a request by Heller would not be moot.

**CONCLUSION**

For the foregoing reasons, the Court will deny the Debtor in Possession's Motion for Order Determining that the Director of the New Mexico Alcohol and Gaming Division May Not Condition Approval of the Transfer of Debtor's Liquor Licenses upon Payment in Full to Liquor Wholesalers (docket 737), and require the delivery of the information as described in this memorandum opinion.


Honorable James S. Starzynski
United States Bankruptcy Judge


I hereby certify that on August 29, 2001, a true and correct copy of the foregoing was either electronically transmitted, faxed, delivered, or mailed to the listed counsel and parties.

Robert Jacobvitz
500 Marquette NW Suite 650
Albuquerque, NM 87102

William F. Davis
PO Box 6
Albuquerque, NM 87103

Office of the United States
Trustee
PO Box 608
Albuquerque, NM 87103-0608

David S. Heller
233 South Wacker Drive
Sears Tower, Suite 5800
Chicago, IL 60606-6401

J. William Cohen
100 Renaissance Center, 36th
Floor
Detroit, MI 48243-1157

Paul M. Fish
500 4th St. NW #1000
Albuquerque, NM 87103-2168

Case 01-10779-sh7   Doc 990   Filed 08/29/01   Entered 08/29/01 12:08:00 Page 29 of 30

Ronald J. Silverman
399 Park Avenue
New York, NY 10022-4689

J.D. Behles
PO Box 849
Albuquerque, NM 87103

Robert Feuille
201 East Main, 11th Floor
Chase Tower
El Paso, TX 79901

Mike Cadigan
6400 Uptown Blvd. NE Suite
570-W
Albuquerque, NM 87110

Gail Gottlieb
PO Box 1945
Albuquerque, NM 87103

Donald Harris
PO Box 8485
Albuquerque, NM 87198-8485

Carlos Miranda
PO Box 1322
El Paso, TX 79947-1322

Dundan Scott
PO Box 587
Albuquerque, NM 87103-0587

David Aelvoet
711 Navarro, Suite 300
San Antonio, TX 78205

Jeffrey Fine
901 Main Street
Dallas, TX 75202

Kim Middlebrooks
315 Fifth Street
Albuquerque, NM 87102

Bryan Brock
NMAGD
725 St. Michaels Drive
Santa Fe, NM 87505

NMAGD
c/o Patricia Madrid
PO Drawer 1508
Santa Fe, NM 87505

Regulation and Licensing
State of NM
725 St. Michaels Drive
Santa Fe, NM 87505

Hugh Dangler
Regulation Licensing
Department
725 St. Michaels Drive
Santa Fe. NM 87505

Daniel R. Rubin
Office of Attorney General
PO Box 1508
Santa Fe, NM 87504-1508

Jonathan Alter
Bingham Dana LLP
One Sate Street
Hartford, CT 06103

Philip Marchiondo
429 Santa Monica Blvd.
 Ste 550
Santa Monica, CA 90401

_____
Mary B. Anderson

Page -29-