UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

PACER Cover Sheet
for Electronically Filed Documents

Any data shown here are current as of 06/12/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

| | |
|---|---|
| **Case Title:** | Furr's Supermarkets, Inc. |
| **Case Number:** | 01-10779 |

## Document Information

| | |
|---|---|
| **Description:** | Memorandum Opinion re: [1807-1] Application For Administrative Expenses in the following amounts: $174,349.60 (based on rate of rent for storage of equipment from 12/19/01 to 7/3/02); $70,520.55 should be allowed and paid if the value of comparable storage space is used to measure a fair and reasona |
| **Received on:** | 2003-04-14 15:31:07.000 |
| **Date Filed:** | 2003-04-14 00:00:00.000 |
| **Date Entered On Docket:** | 2003-04-15 00:00:00.000 |

## Filer Information

| | |
|---|---|
| **Submitted By:** | James Burke |

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
FURRS SUPERMARKETS, INC.
    Debtor.                                        No. 11-01-10779 SA

**MEMORANDUM OPINION ON TGAAR'S
MOTION FOR PAYMENT OF
ADMINISTRATIVE EXPENSES -and-
CROSS MOTIONS FOR SUMMARY JUDGMENT**

      This matter is before the Court on the Motion for Payment of Administrative Expenses filed by TGAAR Properties, Inc. d/b/a Westwood Village Shopping Center ("TGAAR") ("Motion") (doc. 1807). TGAAR is represented by Robert K. Whitt. The Chapter 7 Trustee objected to the Motion (doc. 1826). Trustee is represented by Jacobvitz, Thuma & Walker, a Professional Corporation (David T. Thuma). The Court has also considered the following: Trustee's Motion for Partial Summary Judgment[1] on TGAAR, Inc.'s Motion for Payment of Administrative Expenses (doc. 1888), TGAAR's Amended Motion/Application for Payment of Administrative Expenses (doc. 1928), TGAAR's Response to Trustee's Motion for Partial Summary Judgment on TGAAR, Inc.'s Motion for Payment of Administrative Expenses -and- TGAAR's Cross-Motion for Partial Summary Judgment (docs. 1929, 1930),

---

[1] TGAAR asserts two claims, one for rent or storage, and one for damages resulting from the removal of equipment from leased premises. Trustee's Motion addresses only the legal basis for asserting a rent/storage claim.

TGAAR's Memorandum of Law (doc. 1931), Trustee's Response to TGAAR Properties, Inc.'s Cross-Motion for Partial Summary Judgment and Objection to the Amended Motion for Payment of Administrative Expenses (doc. 1955), the Affidavit of Yvette J. Gonzales (doc. 1956), Trustee's Supplement to Response to TGAAR Properties, Inc.'s Cross-Motion for Partial Summary Judgment, and Objection to the Amended Motion for Payment of Administrative Expenses (doc. 1958), TGAAR's Reply to Trustee's Response to TGAAR's Cross-Motion for Partial Summary Judgment and to the Trustee's Supplement to Response (doc. 1965) and TGAAR's Supplement to Response to Trustee's Motion for Partial Summary Judgment (doc. 2041). The Court has also considered Debtor's Motion for Order Extending Time Within Which Debtor May Assume or Reject Unexpired Leases of Nonresidential Real Property (doc. 157), Order Extending Time Within Which Debtor May Assume or Reject Unexpired Leases of Nonresidential Real Property (doc. 326), Debtor's Motion to Reject Certain Unexpired Real Estate Leases, Subleases, and Equipment Leases (doc. 903), the Order Granting in Part Debtor's Motion to Reject Certain Unexpired Real Estate Leases, Subleases, and Equipment Leases (doc. 1031), and Trustee's Report of Sale [of Store #966] (doc. 1725). The Court has jurisdiction pursuant to 28 U.S.C. 1334 and 157 and

this is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(A) and (B).

The matters before the Court are cross-motions for summary judgment. Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable by Bankruptcy Rule 7056. That rule provides for judgment, or partial judgment, if the Court finds that there is no <u>genuine</u> issue of <u>material</u> fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

**<u>FACTS</u>**

1. Debtor filed its chapter 11 proceeding on February 8, 2001.
2. At the time of the filing, Debtor operated a large number of grocery stores in Texas and New Mexico and was lessee for Furr's Store #966 located in Midland, Texas.
3. The lease ("Lease") had been acquired from Safeway Stores, Incorporated, and had a primary term ending on December 31, 2001, with six five-year renewal options requiring written notice six months before the expiration of the then current term of the Lease. Rent was due on the first day of the month in advance, and there were provisions for percentage rent (not applicable here.)

The monthly rent was approximately $19,000 per month plus ad valorem taxes of approximately $33,000 per year.

4. Debtor filed a motion for an extension of time to assume the Lease on March 1, 2001. (doc. 157).

5. On April 6, 2001, the Court entered an Order granting an extension of time to assume the Lease to August 10, 2001. (doc. 326).

6. On or about June 18, 2001, Debtor signed a letter purporting to exercise the first five year extension of the lease.

7. The Debtor had not, by August 11, 2001, filed a motion to assume or reject the Lease.

8. Debtor filed a motion to reject the Lease on August 17, 2001. The motion was granted by order entered September 6, 2001. The order also provided that the automatic stay was terminated with respect to the Lease as of August 31, 2001.

9. In a letter dated August 23, 2001, Debtor notified TGAAR that it would be closing all its stores effective August 31, 2001.

10. In a letter dated August 31, 2001, Debtor sent the keys to Store #966 to TGAAR.

11. Lessor has received no payments after August 31, 2001. The Court assumes that all post petition obligations under the lease were paid through August 31, 2001.

12. Debtor turned over the keys but left most of its personal property located at the store, including shelves, racks, meat counter equipment, deli equipment, dairy cases, check out counters, and other items typically found in a retail grocery store (the "Equipment").

13. The Chapter 11 case was converted to Chapter 7 on December 19, 2001.

14. The Chapter 7 Trustee sold the Equipment at auction on or about May 30, 2002. The auction was held in store #966. The Trustee reports receiving total proceeds from store #966 of $24,742.50. (doc. 1725). She paid the auctioneer's commission of $4,948.50 and received a net of $19,794.00. (Id.) (Whether the Trustee is entitled to only 10% of the net proceeds, as asserted in the Trustee's Supplement to Response at 4 (doc 1958), is of questionable relevance.)

15. Between August 31, 2001 and May 30, 2002, TGAAR did not seek relief from the automatic stay, or any other relief from the Court to dispose of the Equipment, charge for storage, or otherwise protect its interests. TGAAR did

send some bills to the Trustee for storage, which prompted discussions among the parties.

16. No agreement was entered into between the Trustee and TGAAR regarding storage of the Equipment, and no order was entered regarding storage.

17. There is a great deal of sometimes conflicting evidence in the motions, briefs and affidavits about a potential sale of the store #966 lease, the surrender of the keys and property and the ramifications thereof, the requests by TGAAR for the estate and trustee to remove assets, whether the Equipment should be left at the leased premises in case a new tenant would want to use it, a refusal to allow removal of assets without paying rent, phone calls between the parties, negotiations among the parties to sell/buy the Equipment, objections to auctions, etc. The fact is, any of the parties could have acted sooner. The Court finds that the Debtor, the Trustee, and TGAAR are not "at fault" for the existence of this claim; alternatively they are all equally "at fault."

18. In addition to rent, TGAAR seeks an additional $15,000 for cleaning and dump fees, and $120,000 to repair damages done by buyers in removing equipment from the

Case 01-10779-sh7    Doc 2068    Filed 04/14/03    Entered 04/15/03 08:46:00    Page 7 of 19

store[2]. It is true that a lessor need not prove damages with mathematical exactitude, see In re Goldblatt Bros., Inc., 66 B.R. 337, 346 (Bankr. N.D. Ill. 1986), but TGAAR admits that its numbers are estimates. See, e.g. Affidavit of Gary R. Baily and Gary Glasscock ¶¶ 24, 26 ("Affidavit")(attached to Response to Trustee's Motion for Summary Judgment, doc. 1929). The Court would require further explanation and/or proof before finding that those numbers are accurate.

19. TGAAR also, as an alternative request, seeks rent for the Lease premises at the rate of $3.00/square foot/year, which it claims is the fair market rental of comparable storage space in the Midland, Texas area. Store #966 contains approximately 44,000 square feet. Affidavit ¶ 27. There is no evidence on what portion of the 44,000 square feet was "necessary" for storage of the Equipment.

20. TGAAR filed a withdrawal of its administrative proof of claim on or about February 22, 2002 (doc. 1577). The Trustee raises this withdrawal in her response to TGAAR's cross motion for summary judgment. The Court, however, is not considering this withdrawal in connection with

---

[2]TGAAR's original motion requested $5,000 for dump fees and $15,000 to repair damages done in removing the Equipment.

these motions because it seems that the withdrawal may have been filed in error. See TGAAR's Reply, ¶ 1 p.3 (doc. 1965).

21. TGAAR raises an objection to the Trustee's late-filed response to its motion for summary judgment. The Court finds that the short delay was not prejudicial to the parties or the Court and therefore overrules the objection.

**CONCLUSIONS OF LAW**

1. Debtor did not assume the Lease. Assumption is a formal process that requires a motion, notice to the creditors, and a court order. See 11 U.S.C. § 365(a)[3] and Bankruptcy Rules 6006(a)[4] and 9014[5]. See also Lindsey v. Department of Labor (In re Harris Management Company, Inc.), 791 F.2d 1412, 1414 (9th Cir. 1986)(Assumption requires

---

[3]Section 365(a) provides, in part: "[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

[4]Bankruptcy Rule 6006(a) provides: "A proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014."

[5]Bankruptcy Rule 9014 provides, in part: "In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."

"express approval" of court.); <u>In re JAS Enterprises, Inc.</u>, 180 B.R. 210, 215 (Bankr. D. Neb. 1995), <u>aff'd.</u> 113 F.3d 1238 (8th Cir. 1997)("[T]he Bankruptcy Code does not permit a debtor to assume an unexpired lease without court approval and prior notice to creditors.")  Cf. <u>Gretchen's of Minneapolis, Inc. v. Highland House, Inc. (In re Interco, Inc.)</u>, 186 F.3d 1032, 1034 (8th Cir. 1999)(Executory contract may only be rejected with court approval.)  There was no motion to assume the Lease, no notice, and no court order.

2. Debtor's post-petition extension of the Lease was not an assumption (see conclusion 1) and was not a new post-petition contract.  Under Texas law an extension of a lease continues the original lease and is not a new contract.  See <u>Pruett Jewelers, Inc. v. Weingarten, Inc.</u>, 426 S.W. 2d 902, 904 (Tx. Ct. App. 1968); <u>Springfield Fire & Marine Ins. Co. v. Republic Ins. Co.</u>, 262 S.W. 814, 817 (Tx. Ct. App. 1924).  See also <u>In re Country Club Estates at Aventura Maintenance Association, Inc.</u>, 227 B.R. 565, 567 (Bankr. S.D. Fl. 1998)(Automatic renewal clause continues the original contract.)  Therefore, cases cited by TGAAR such as <u>Devan v. Simon DeBartolo Group, L.P. (In re Merry-Go-Round Enterprises,</u>

Case 01-10779-sh7    Doc 2068    Filed 04/14/03    Entered 04/15/03 08:46:00    Page 10 of 19

Inc.), 180 F.3d 149 (4th Cir. 1999) and Nostas Associates v. Costich (In re Klein Sleep Products, Inc.), 78 F.3d 18 (2nd Cir. 1996), dealing with rejection after assumption or post-petition contracting, are inapplicable to this case.

3. The Lease was rejected by operation of law on August 11, 2001. See 11 U.S.C. § 365(d)(4)[6]. Debtor had an extension until August 10, 2001, and did not file a motion to assume the Lease by the deadline. The Lease is therefore deemed rejected.

4. Alternatively, the Lease was rejected as of August 31, 2001 pursuant to the September 6, 2001 order (doc. 1031).

5. It does not matter whether the lease was rejected on August 11 or 31 because post-petition obligations were paid through the end of August. Therefore, there is no claim for section 365(b)(3)[7] rents.

---

[6]Section 365(d)(4) provides, in part: "[I]f the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor."

[7]Section 365(b)(3) provides, in part: "The trustee shall timely perform all the obligations of the debtor, ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed

6.  The automatic stay terminated for the Lease property on August 31, 2001. Therefore, after August 31, 2001 TGAAR was free to take steps to evict Debtor, relet the property, seize the Equipment, or take whatever steps it wanted consistent with Texas law.

7.  Rejection of the Lease gives TGAAR a prepetition unsecured claim for damages. See 11 U.S.C. § 365(g)[8] and 502(g)[9]. See also Medical Malpractice Insurance Association v. Hirsch (In re Lavigne), 114 F.3d 379, 387 (2nd Cir. 1997).

8.  TGAAR's claim consists of any prepetition arrearages under the Lease, plus a claim under the extended Lease for rent and other lease charges after August, 2001.

---

or rejected, notwithstanding section 503(b)(1) of this title."

[8] Section 365(g) provides, in part: "[T]he rejection of an ... unexpired lease of the debtor constitutes a breach of such ... lease -- (1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition."

[9] Section 502(g) provides, in part: "A claim arising from the rejection, under section 365 of this title ... of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined and shall be allowed ... or disallowed ... the same as if such claim had arisen before the date of the filing of the petition."

Case 01-10779-sh7    Doc 2068    Filed 04/14/03    Entered 04/15/03 08:46:00    Page 12 of 19

9.  Under Texas law, TGAAR must mitigate its damages. <u>Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.</u>, 948 S.W.2d 293, 299 (Tx. 1997).

10. TGAAR's unsecured rent claim is limited by 11 U.S.C. § 502(b)(6)[10].

11. A portion of TGAAR's claim is an administrative claim under 11 U.S.C. § 503(b)(1)(A)[11] for the fair rental value for storage of the Equipment from and after August 31, 2001 to May 30, 2002. <u>See, e.g.</u>, <u>In re Trak Auto Corporation</u>, 277 B.R. 655, 666-67 (Bankr. E.D. Va. 2002)("This District has previously held 'once a lease is rejected ... if the debtor remains in possession by

---

[10] Section 502(b)(6) provides, in part: "[If there has been an objection to a claim] the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that -- (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds -- (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of -- (i) the date of the filing of the petition; and (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates."

[11] Section 503(b)(1)(A) provides: "After notice and a hearing, there shall be allowed administrative expenses ... (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case."

failing to vacate the premises, the estate becomes liable to the lessor for an administrative expense claim arising from the benefit accruing to the estate for the continued use of the estate.'"); Boyd v. Dock's Corner Associates (In re Great Northern Forest Products, Inc.), 135 B.R. 46, 59 (Bankr. W.D. Mi. 1991)("It is well established that post-petition storage costs, or use and possession costs, may be granted administrative expense priority.") An expense is administrative only if it arises out of a transaction between the creditor and the debtor in possession or trustee and only to the extent that the consideration supporting the claim was supplied to and beneficial to the trustee or debtor in possession. Bachman v. Commercial Financial Services, Inc. (In re Commercial Financial Services, Inc.), 246 F.3d 1291, 1294 (10th Cir. 2001); Isaac v. Temex Energy, Inc. (In re Amarex, Inc.), 853 F.2d 1526, 1530 and n.4 (10th Cir. 1988) (citations omitted); In re Climax Chemical Company, 167 B.R. 665, 666 (Bankr. D. N.M. 1994). See also Burlington Northern Railroad Company v. Dant & Russell, Inc. (In re Dant & Russell, Inc.), 853 F.2d 700, 706 (9th Cir. 1988)("The statute is explicit. Any claim for administrative expenses and costs must be the actual and

Page -13-

necessary costs of preserving the estate for the benefit of its creditors.")(citation omitted.) The Court finds that the estate benefitted from the storage of the Equipment. However, the Court cannot find what percentage of the 44,000 square feet was necessary for storage, so it cannot determine the actual and necessary cost of preserving the estate. See <u>In re Grimm & Rothwell, Inc.</u>, 108 B.R. 186, 190 (Bankr. S.D. Oh. 1989) (Estate charged for use of only 20% of premises because only 20% was used for post-petition storage.) The benefit received by the estate, however, will not exceed the actual value of the Equipment because it would not be "necessary" to pay more to store equipment than it was worth. <u>In re C & L Country Market of New Market, Inc.</u>, 52 B.R. 61, 63 (Bankr. E.D. Pa. 1985)("We hold, that in the absence of countervailing circumstances, the actual, necessary costs and expenses of preserving assets of the estate under § 503(b)(1)(A) cannot exceed the value of those assets.")

12. TGAAR argues that as a holdover tenant under Texas law, the estate must pay the rent fixed by the lease. While this may be true under state law, it is not true in the bankruptcy context. The amount of TGAAR's administrative

Page -14-

Case 01-10779-sh7   Doc 2068   Filed 04/14/03   Entered 04/15/03 08:46:00   Page 15 of 19

claim is limited by the value to the estate of the services it received. Dant & Russell, Inc., 853 F.2d at 707. "This limitation acknowledges that the debtor-in-possession or trustee's liability for actual use and occupancy is not compensatory but rather is founded upon the equitable principle of preventing unjust enrichment." Id. Potential benefit does not satisfy the requirement, nor does mere possession. General American Transportation Corporation v. Martin (In re Mid Region Petroleum, Inc.), 1 F.3d 1130, 1133 (10th Cir. 1993). The reasonable rental value of the property used provides the measure of a landlord's administrative claim for rent. Reiter v. Fokkena (In re Wedemeier), 237 F.3d 938, 941 (8th Cir. 2001).

13. TGAAR also argues that the rent stated in the lease is presumptively the fair rental value of the property for the period after the lease was rejected. Dant & Russell, 853 F.2d at 707. The Court would agree if the Debtor/Trustee continued to use the space as a store. In this case, the property was used only for storage, and the Court finds that TGAAR's alternative valuation of $3.00/square foot is more realistic.

14. This Court believes that the benefit to the estate cannot exceed the proceeds realized from the sale of the assets that were preserved. <u>See</u> Restatement (First) of Restitution § 155:

> Where a person is entitled to restitution from another because the other, without tortious conduct, has received a benefit, the measure of recovery for the benefit thus received is the value of what was received, limited, if the recipient was not at fault or was no more at fault than the claimant, to its value in advancing the purposes of the recipient....

The Court also finds that storage fees that exceed the value of the property stored cannot be "necessary" expenses for the purposes of Bankruptcy Code § 503(b)(1).

15. The portion of TGAAR's administrative rent claim for the period September 1, 2001 through December 19, 2001 is a chapter 11 administrative expense. The portion of TGAAR's administrative rent claim for the period after December 19, 2001 is a Chapter 7 administrative expense.

16. Neither the Chapter 11 or Chapter 7 administrative expenses for rent are entitled to super-priority. <u>See</u> <u>In re Daisy/Cadnetix Inc.</u>, 126 B.R. 87, 91 (Bankr. N.D. Ca. 1991)(Chapter 11 administrative rent claim has the same status as all other Chapter 11 administrative claims.); <u>In re Dawson</u>, 162 B.R. 329, 333 (Bankr. D. Ks.

1993)(Trustee ordered to pay chapter 7 administrative rent subject to disgorgement if assets insufficient to pay all administrative expenses in full.)  Therefore, TGAAR will be paid pro-rata with other administrative expenses.

**SUMMARY**

Trustee's Motion for Partial Summary Judgment, to deny TGAAR an administrative claim for rent or storage as a matter of law, will be denied.

TGAAR's Cross Motion for Summary Judgment, to establish its administrative claim, will be denied because the Court finds that there are genuine fact issues related to the amount of TGAAR's claim and the claim's classification as unsecured/administrative.

An order will enter.

                                              Honorable James S. Starzynski
                                              United States Bankruptcy Judge

Case 01-10779-sh7    Doc 2068    Filed 04/14/03    Entered 04/15/03 08:46:00 Page 18 of 19

I hereby certify that on April 14, 2003, a true and correct
copy of the foregoing was either electronically transmitted,
faxed, delivered, or mailed to the listed counsel and parties.

Robert K. Whitt
505 N. Big Spring, Suite 402
Midland, TX 79701

David T. Thuma
500 Marquette NW Suite 650
Albuquerque, NM 87102

Office of the United States Trustee
PO Box 608
Albuquerque, NM  87103-0608

*James E. Burke*