# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

## PACER Cover Sheet
## for Electronically Filed Documents

Any data shown here are current as of  06/10/06  . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

| | |
|---|---|
| **Case Title:** | Furr's Supermarkets, Inc. |
| **Case Number:** | 01-10779 |

### Document Information

| | |
|---|---|
| **Description:** | Post-Trial Memorandum Opinion re: [1807-1] Application For Administrative Expenses in the following amounts: $174,349.60 (based on rate of rent for storage of equipment from 12/19/01 to 7/3/02); $70,520.55 should be allowed and paid if the value of comparable storage space is used to measure a fair |
| **Received on:** | 2005-09-23 10:56:05.000 |
| **Date Filed:** | 2005-09-23 00:00:00.000 |
| **Date Entered On Docket:** | 2005-09-26 00:00:00.000 |

### Filer Information

| | |
|---|---|
| **Submitted By:** | James Burke |

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

In re:
FURRS SUPERMARKETS, INC.
    Debtor.                                            No. 11-01-10779 SA

**POST-TRIAL MEMORANDUM OPINION ON
TGAAR'S MOTION FOR PAYMENT OF
<u>ADMINISTRATIVE EXPENSES (doc. 1807)</u>**

     This matter came before the Court for trial of the Motion for Payment of Administrative Expenses filed by TGAAR Properties, Inc. d/b/a Westwood Village Shopping Center ("TGAAR") ("Motion") (doc. 1807). TGAAR is represented by Robert K. Whitt. The Chapter 7 Trustee objected to the Motion (doc. 1826). Trustee is represented by Jacobvitz, Thuma & Walker, a Professional Corporation (David T. Thuma). The Court has jurisdiction pursuant to 28 U.S.C. 1334 and 157 and this is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(A) and (B). This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052. The Court earlier entered a Memorandum Opinion (doc. 2068)("Memorandum") denying TGAAR's and Trustee's cross-motions for summary judgment, and entered orders denying those motions. The Memorandum did however rule that TGAAR was entitled to chapter 11 and chapter 7 administrative claims. Memorandum, Conclusion ¶ 15. That Memorandum and its findings and conclusions are incorporated herein.

TGAAR seeks an administrative claim that consists of three discrete amounts: 1) rent of $283,851.15, consisting of rent for use of the premises from December 19, 2001 to July 3, 2002, during the chapter 7 portion of this case ($135,479.20[1]), rent for the chapter 11 post-rejection period to the conversion to chapter 7 ($78,113.87) and "delay" damages from June through September 2002 ($70,258.08) (representing the period after the chapter 7 auction to occupancy by new tenants); 2) payments for damages that occurred in connection with the auction of estate property at the store premises, consisting of $106,797.95; and 3) clean up costs after the auction, in the amount of $8,728.60.

The trial entailed testimony by Gary Glasscock, a partner in TGAAR; Walter Parker, the auctioneer retained by the Trustee to auction off the personal property located at the store; Gary Bailey, a partner in TGAAR; and Yvette Gonzales, the Chapter 7 Trustee. The parties also stipulated to the use of the following persons' depositions: Bill Mussar, the owner of Tierra Construction Company, who did work on the store after TGAAR regained possession; Marty Pearcy, an air

---

[1] These figures appear in Exhibit 35. Rent for June 2002 appears as both a chapter 7 charge and a "delay" charge, so the monthly rent of $20,823.08 should be subtracted from one or the other.

Case 01-10779-sh7    Doc 3161    Filed 09/23/05    Entered 09/26/05 09:38:00 Page 3 of 16

conditioning technician, who did work on the store after TGAAR regained possession; Rex Bradley Kincaid, a floor layer, who provided a cost estimate to TGAAR to repair floors at the store; Colby Todd Easterwood, a master electrician, who did a complete rewire of the building after TGAAR regained possession; Frank Gutierrez, a maintenance man that formerly worked for TGAAR, who granted access to the auctioneer during the auction and later helped clean the store; James Alan Spar, a remodeling contractor, who attended the auction and purchased various items, and also had access to the store for a period of time after the auction; and Kevin Earl Murphy, a restaurant repairman, who attended the auction and purchased various items, and also observed people removing items after the auction.

**FACTS**

Mr. Parker had several employees show up a few days before the auction to prepare the store and equipment for auction. He arrived at the premises on the day of the auction (Thursday, May 28, 2002) and remained on the premises until about 1:30 p.m. the next day. Before the auction, he announced that anyone purchasing refrigeration equipment had to have a licensed refrigeration technician evacuate the compressor before moving the items. He also announced that

Page -3-

all electrical and water lines needed to be capped when equipment was removed.

Mr. Parker never had control over the premises. TGAAR had the keys and let people (including the auctioneer and his employees) in and out. TGAAR maintained full control over the premises. TGAAR also provided keys to others, both before and after the auction sale, and Mr. Glasscock gave buyers permission to come in after hours to remove items. Mr. Spar, one of the buyers, had a key and did not complete removal of his purchases until mid-June, 2002. The day after the auction, when the auctioneer arrived the premises were already open and people were removing property.

The gross auction proceeds were about $25,000. Earlier in the case, TGAAR made an offer to Debtor to buy all assets in the store from the estate for $5,700.

TGAAR began marketing the space to potential tenants, including WalMart in early 2002. TGAAR leased a portion of the property to Goodwill Industries starting in May, 2003, and a portion to the Southern Career Institute starting in December, 2003. (Exhibits 28 and 29). A portion remained empty as of the trial.

**DISCUSSION**

A.  <u>TGAAR is entitled to a prorated Chapter 11 and 7 administrative rent claim.</u>

Based on the Court's earlier Memorandum, TGAAR is entitled to an administrative claim for the value of the use of the building to the estate. <u>See</u> Memorandum, Conclusion ¶11. <u>See also</u> <u>In re Mainstream Access, Inc.</u>, 134 B.R. 743, 749 (Bankr. S.D. N.Y. 1991). The administrative expense scheme does not focus on whether the creditor sustained a loss. <u>Kinnan & Kinnan P'ship v. Agristor Leasing</u>, 116 B.R. 162, 166 (D. Neb. 1990). The Court finds that the value to the estate was $24,742.50 (Exhibit 14) for several reasons. First, the ultimate value of the equipment was $24,742.50, which serves as an upper limit on its benefit to the estate. <u>See</u> Memorandum, Conclusion ¶11; <u>Mainstream Access, Inc.</u>, 134 B.R. at 750 (Landlord that ended up with stored personal property was not entitled to further administrative expense because landlord in fact got all the value to be had and the estate got none.) Second, the automatic stay was terminated before the case converted to chapter 7, and TGAAR took no steps to regain possession while the basically worthless personal property remained there pending sale. TGAAR should not be allowed to sit idly by and let rent accumulate as an administrative expense when it knew that the property left on

Page -5-

the premises was basically worthless.  This is especially true given that TGAAR was marketing the property during this time, and the personal property left on the premises would have been attractive to a new supermarket tenant.  See id. at 748-49 (Listing options that landlord can pursue to regain possession.)  Third, once the lease was rejected or deemed rejected "the trustee shall immediately surrender such nonresidential real property to the lessor."  11 U.S.C. § 365(d)(4).  Clearly TGAAR could have obtained an order of repossession if it were worried about disturbing the remaining personal property.  Fourth, Mr. Baily testified that he had a conversation with the Trustee, who assured him that TGAAR would be compensated for storing equipment as long as the equipment was worth more than the storage costs and that if it was worth less, it would be abandoned to TGAAR.  Therefore, TGAAR could justifiably rely only on receipt of the value of the equipment.

The period for which the premises were used as storage began on August 31, 2001[2] and ended on May 30, 2002, Memorandum Conclusion ¶11, with the conversion date being

---

[2] Memorandum Finding ¶11 recites that the Court assumed that all post petition obligations were paid through August 31, 2001, a slight inconsistency.  The Court will count August 31, 2001 as the starting date for calculating the involuntary rent period.

Page -6-

December 19, 2001. It therefore seems appropriate to prorate the value extended by TGAAR to the estate between a chapter 11 administrative claim and a chapter 7 administrative claim, an approach this Court has already used in calculating prepetition and post petition real estate tax obligations in this case. See In re Furr's Supermarkets, Inc., No. 7-01-10779 SA, Order Extending Time within which Trustee may Assume or Reject Unexpired Lease of El Paso Distribution Center, doc. 1567 (Bankr. D. N.M. Feb. 15, 2002), aff'd., 283 B.R. 60 (10th Cir. B.A.P. 2002). The proration seems reasonable given that both the chapter 11 estate and the chapter 7 estate benefitted from being able to use the premises for storage. $24,742.50 was the full amount of the auction proceeds. Prorating the $24,742.50 between the 110 chapter 11 days and the 169 chapter 7 days results in a chapter 11 storage claim of $9,755.11 and a chapter 7 storage claim of $14,987.39.

TGAAR's claim for "delay in obtaining possession" (Exhibit 35) charges four months of rent (at the rate contracted with the new tenants) for June through September 2002, when the new tenants took possession. There is no legal basis for this claim. TGAAR's deemed prepetition lease breach claim includes this theory of recovery. In re Macomb Occupational Health Care, LLC, 300 B.R. 270, 284 (Bankr. E.D.

Page -7-

Case 01-10779-sh7    Doc 3161    Filed 09/23/05    Entered 09/26/05 09:38:00 Page 8 of 16

Mich. 2003)(Sections 365(g)(1) and 502(g) mandate that a claim for rent under a lease for continued occupancy post-rejection of the lease be treated as having arisen prior to the case, i.e., as an unsecured claim.) Furthermore, on cross examination, Mr. Glasscock testified that if TGAAR had had a tenant ready, all property could have been removed in a matter of days. The evidence also did not show why it took TGAAR several months to clean the property or why TGAAR waited until the end of July to start cleanup.

B.  TGAAR is not entitled to any claims for damages.

All damages claimed by TGAAR relate to conduct of the auction and the removal of property from the premises after the auction. TGAAR claims the auctioneer was negligent.

 1.  The estate is not liable for the damages.

In general, an employer is vicariously liable for the torts of an agent or employee acting within the scope of his or her agency or employment. Baptist Mem'l Hosp. System v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998); Restatement (Second) of Agency § 219(1) (1958). However, an employer is not liable for the torts of an independent contractor. Baptist Mem'l Hosp. System, 969 S.W.2d at 947; Restatement (Second) of Torts § 409 (1965). Therefore, if the damages were caused by the

auctioneer, the estate would be liable if he were an agent or employee, but not liable if he were an independent contractor.

> Under Texas law, an independent contractor is one "who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details." Pitchfork Land and Cattle Co. v. King, 162 Tex. 331, 346 S.W.2d 598, 602-03 (1961); Hoescht Celanese Corp. v. Compton, 899 S.W.2d 215, 220 (Tex.App.-Houston [14th Dist.] 1994, writ denied). The standard tests for determining whether one is acting in the capacity of an independent contractor measure the amount of control that the employer exerts or has a right to exert over the details of the work. Newspapers, Inc. v. Love, 380 S.W.2d 582, 591 (Tex. 1964); Hoescht Celanese Corp., 899 S.W.2d at 220. In determining whether a person is an employee or an independent contractor, a court is required to examine a number of factors, including (1) the independent nature of the contractor's business; (2) his obligation to supply necessary tools, supplies, and materials; (3) his right to control the progress of the work except as to final results; (4) the time for which he is employed; and (5) the method by which he is paid, whether by the time or by the job. Pitchfork Land and Cattle Co., 346 S.W.2d at 603; Hoescht Celanese Corp., 899 S.W.2d at 220. The most fundamental of these factors, however, is the right of control. See Ross v. Texas One Partnership, 796 S.W.2d 206, 210-11 (Tex.App-Dallas 1990), writ denied per curium, 806 S.W.2d 222 (Tex. 1991). Where these exists no dispute about the controlling facts and only one reasonable conclusion can be inferred, the question of whether one is an "employee" or "independent contractor" is a question of law. Crow v. TRW, Inc., 893 S.W.2d 72, 78 (Tex,App.-Corpus Christi 1994, no writ); Sherard v. Smith, 778 S.W.2d 546, 548 (Tex.App.-Corpus Christi 1989, writ denied).

Case 01-10779-sh7    Doc 3161    Filed 09/23/05    Entered 09/26/05 09:38:00    Page 10 of 16

Duran v. Furr's Supermarkets, Inc., 921 S.W.2d 778, 786
(Tex.App. 1996). See also Sugar Land Properties, Inc. v.
Becnel, 26 S.W.3d 113, 117 (Tex.App. 2000)(Applying same five
factors.) And see Nationwide Mutual Ins. Co. v. Darden, 503
U.S. 318, 323-24 (1992)(Court adopts the "common law test" for
determining who is an "employee", which involves twelve
similar factors.)

    The uncontroverted evidence before this Court requires
that it find that the auctioneer was an independent contractor
as a matter of law. First, auctioneers are skilled
professionals engaged in their own line of business and
offering their services to the public in a method regulated by
statute. See Tex. Occ. Code Ann. § 1802.001 (2003) et seq.
Both the trustee and the auctioneer testified that the Trustee
had no control over the auctioneer's activities and that he
was responsible for the entire auction. The auctioneer
provided services through his own employees. He was paid by
the job per a contract, not by the hour. The Trustee employed
the auctioneer on a discrete basis, for several auctions, and
then the relationship ended. The Trustee had no
responsibility for hiring or paying the wages or benefits of
the auctioneer's assistants. The Trustee's regular business
does not entail auctioning property. Accord Case v. ADT

Case 01-10779-sh7    Doc 3161    Filed 09/23/05    Entered 09/26/05 09:38:00    Page 11 of 16

Automotive, Inc., 17 F.Supp.2d 1077, 1080 (W.D. Mo. 1997), aff'd., 163 F.3d 601 (8th Cir. 1998) (Auctioneer is independent contractor.); Restatement (Second) of Agency § 1(3) cmt. e (1958) (Auctioneers are generally considered independent contractors.)

Therefore, finding that the auctioneer was in fact an independent contractor, the estate and/or Trustee are not liable for any damages caused by his alleged negligence. The Court will deny the damages request.

    2.    <u>TGAAR did not prove the amount of damages.</u>

Furthermore, even if the estate were liable for damages caused by the auctioneer, TGAAR failed to prove those damages. First, TGAAR did not meet the burden of proving the measure of damages, and second, TGAAR did not prove the damages by a preponderance of the evidence.

        a.    <u>Texas law limits damages to real estate.</u>

> [Under Texas law,] [w]hen an injury to land is temporary and can be remediated at reasonable expense, the proper measure of damages is the cost of restoration to its condition immediately preceding the injury. Kraft [v. Langford], 565 S.W.2d [223] at 227 [(Tex. 1978)]. However, the diminution in fair market value is the measure of damages when the cost of restoration exceeds the diminution in fair market value. North Ridge Corp. v. Walraven, 957 S.W.2d 116, 119 (Tex.App.-Eastland 1997, pet. denied) (citing Atlas Chem. Indus., Inc. v. Anderson, 514 S.W.2d 309 (Tex.Civ.App.-Texarkana 1974), aff'd, 524 S.W.2d 681 (Tex.1975)).

Case 01-10779-sh7    Doc 3161    Filed 09/23/05    Entered 09/26/05 09:38:00 Page 12 of 16

Mieth v. Ranchquest, Inc., ___ S.W.3d ___, 2005 WL 615594, *4 (Tex.App. 2005). See also Primrose Operating Co., Inc. v. Senn, 161 S.W.3d 258, 261 (Tex.App. 2005) (same.) Accord Malden Mills Indus., Inc. v. Maroun (In re Malden Mills Indus., Inc.), 303 B.R. 688, 699 and n.3 (1st Cir. B.A.P. 2004) (Massachusetts has the same rule as Texas; the standard for measuring damage to realty is diminution in market value or the cost of cure, whichever is less. If restoration is awarded, it must be adjusted for depreciation and obsolescence. If restoration is not reasonably necessary or its cost is unreasonable, no restoration may be awarded.) Furthermore, under Texas law the award of damages is allowable only to restore a property to the condition immediately preceding the injury. Sadler v. Duvall, 815 S.W.2d 285, 292 (Tex.App. 1991).

TGAAR did not present evidence on the fair market value of the premises before and after the damages, nor the diminution allegedly attributable to the auctioneer's actions. The Court observes that the building, before the auction, had been used for over twenty years as a supermarket, was dirty, had asbestos floors, was unoccupied and available for rent for an extended time period after Furrs closed, and eventually was subdivided and put to alternative use in different lines of

business.  There was no evidence regarding regular or deferred maintenance.  The Court cannot find that the property's market value depreciated significantly, if at all, from the evidence presented.  Therefore, TGAAR has failed to prove it is entitled to any damages.

      b.   <u>Damages were not sufficiently proved.</u>

To support its damage claims, TGAAR presented the deposition testimony of various people that worked on the building after TGAAR regained possession.  To summarize the underlying theme of these depositions, the Court finds that after work was completed in restoring the premises to a like-new condition for reletting, TGAAR asked for and obtained cost estimates to repair the damage done to the property after the auction.  Overall, the cost estimates were guesstimates by the various craftsmen.  And, the estimates were based on bringing the property back to a new condition.  TGAAR is not entitled to the return of a new building as an administrative expense of this chapter 7; any damage claims for wear and tear or abuse are prepetition damage claims through 11 U.S.C. § 365(g)(1).  In sum, the Court could not find with any

confidence the amount of damages attributable to the post-auction conduct[3].

C. <u>TGAAR is entitled to an administrative claim for cleanup costs.</u>

The Trustee's contract with the auctioneer specified that the premises would be left in a "broom clean" condition. Evidence at trial demonstrated that it was not. TGAAR was at least a third party beneficiary of the contract between the Trustee and the auctioneer. The evidence showed that TGAAR expended $8,728.60 in cleaning up. The Court finds that this should be an additional administrative expense of the Chapter 7 estate.

**CONCLUSION**

The Court will enter an Order allowing TGAAR $ 9,755.11 as a Chapter 11 administrative claim and $ 14,987.39 plus $ 8,728.60 (total $ 23,715.99) as Chapter 7 administrative expenses, and denying all other relief.

---

[3] Furthermore, at this point the dispute is between TGAAR on one hand, and the auctioneer on the other. The Bankruptcy Court lacks jurisdiction to determine issues solely between third parties when the outcome has no effect on the estate. <u>See</u> <u>Gardner v. United States (In re Gardner)</u>, 913 F.2d 1515, 1518 (10th Cir. 1990); <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 995 (3rd Cir. 1984).

Case 01-10779-sh7    Doc 3161    Filed 09/23/05    Entered 09/26/05 09:38:00 Page 15 of 16

/s/ James S. Starzynski
　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Honorable James S. Starzynski
　　　　　　　　　　　　　　　　United States Bankruptcy Judge

I hereby certify that on September 23, 2005, a true and
correct copy of the foregoing was electronically transmitted,
faxed, delivered, or mailed to the listed counsel and/or
parties.

David T Thuma
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309

Robert K Whitt
3300 N A St Ste 101
Midland, TX 79705-5421

Yvette Gonzales
PO Box 1037
Placitas, NM 87043-1037

/s/ James E. Burke
_____

Page -15-

Case 01-10779-sh7    Doc 3161    Filed 09/23/05    Entered 09/26/05 09:38:00 Page 16 of 16