UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
FURRS SUPERMARKETS, INC.
    Debtor.                                     No. 11-01-10779 SA

**MEMORANDUM OPINION ON AMPLEX'S APPLICATION FOR
ORDER TO PAY SECURED AND/OR ADMINISTRATIVE EXPENSE
<u>CLAIMS RESULTING FROM CONVERSION OF CONSIGNED COLLATERAL</u>**

    This matter came before the Court for trial on the merits of Amplex Corporation's ("Amplex") Application for Order to Pay Secured and/or Administrative Expense Claims Resulting from Conversion of Consigned Collateral ("Application")(doc 2498) and the Trustee's Objection, Amended Objection and Second Amended Objection thereto (docs 2508, 2517, 2556), Amplex's post-trial Memorandum of Law (doc 3226), the Trustee's post-trial Memorandum of Law (doc 3227) and Amplex's Reply (doc 3233). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (B).[1]

    On March 1, 1996, Amplex, a Texas corporation, entered into a "Stamp Consignment Agreement" ("SCA") with Furr's Supermarkets, Inc. ("Furr's")[2]. (Exhibit A). As part of the transaction,

---

[1] All statutory and rule references are to the Bankruptcy Code as it existed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[2] The SCA is between Amplex and Furr's, as consignee. Furr's agreed to accept an average weekly amount of $57,600 in stamps to sell on a consignment basis to the public for face value. Furr's had to remit payments for the full face value of the stamps within 30 calendar days from the stamps' receipt. Furr's could also return stamps and, if they had been previously paid for, receive a refund. Payments were made to the United States Postal Service ("USPS") at a lockbox in Illinois. Furr's agreed to be
                                                                  (continued...)

Furr's executed a "Security Agreement" ("SA")[3]. (Exhibit B) (Together, the SCA and SA are referred to as the "Agreement.") Amplex filed a Texas Financing Statement with the Texas Secretary of State on May 25, 1996. (Exhibit C). Amplex filed a New Mexico Financing Statement with the New Mexico Secretary of State on November 25, 1996. (Exhibit C).

---

[2](...continued)
responsible for the stamps from their receipt until their sale, and for payments derived from sales until their deposit in the lockbox. Furr's agreed to allow the USPS to examine the inventory and any documents while the Agreement was in effect and for three years thereafter. Furr's had a duty to notify Amplex in writing within 5 days of any bankruptcy filing and accompany it with a report describing the stock and sales payments for which Furr's was responsible on the date of notice. Amplex agreed to invoice Furr's with each shipment. The parties agreed that the Agreement involves consignment sales and that neither Amplex nor Furr's would receive title to the stamps. The parties also agreed that the Agreement could only be modified with the approval of the USPS, and that it was the entire agreement of the parties reflecting all rights and obligations.

[3]The SA describes Furr's as "Debtor" and Amplex as "Secured Party." Furr's granted a security interest in all USPS stamps now or hereafter provided or consigned by Amplex pursuant to the SCA, and all substitutes, replacements, proceeds, and returns of stamps. The security interest secured payment and performance of all obligations of Furr's to Amplex in connection with the SCA or any renewals, extensions or modifications, and costs and expenses and attorneys fees. Furr's represented that the collateral was free of all other claims and liens and no defenses existed with respect to the collateral. Furr's also agreed to execute Uniform Commercial Code documents as requested. Default is defined as any default under the SA or the SCA, or if Amplex's security interest should become unenforceable or cease to be a first priority security interest. After default, Amplex may require Furr's to deposit funds into a specially established "Collateral account" which would be impressed with Amplex's lien, or Amplex may take the collateral and proceeds. The SA was entered into and governed by the laws of Texas. The SA could only be amended in writing signed by both parties.

Case 01-10779-sh7    Doc 3289    Filed 09/25/06    Entered 09/25/06 13:54:26 Page 2 of 16

On January 5, 2001, Amplex supplied Furr's with $61,200.00 of stamps, payable February 4, 2001. (Exhibit 6, invoice 535293). On January 19, 2001, Amplex supplied Furr's with another $61,200.00 of stamps, payable February 18, 2001. (Exhibit 6, invoice 543341). Both invoices were unpaid when Furr's filed a voluntary Chapter 11 petition on February 8, 2001. Amplex provided no more stamps after the filing. On February 26, 2001, Amplex filed a secured proof of claim in the amount of $122,400 in the Furr's bankruptcy case, as Claim 27. The Chapter 11 case converted to Chapter 7 on December 19, 2001. The invoices remain unpaid, and the stamps are gone. Neither party produced any records, if such records even exist, of the stamp inventory on the petition or conversion date[4]. Depositions of witnesses also did not suggest any possible inventory figures for these dates. At trial, Amplex provided no evidence that the stamps were fraudulently obtained, or that the Agreement was entered into fraudulently.[5] Amplex also provided no evidence

---

[4]Trustee argues, however, that based on average sales for prior periods, there would have been no stamps left on hand on the petition date. The SCA anticipated weekly sales of $57,600. Approximately 20 days had passed from the last stamp delivery of $61,200 to the filing of the bankruptcy petition.

[5]Under Texas law, actual fraud has the following elements: 1) that a false, material representation was made, 2) that was either known to be false when made or was made without knowledge of its truth, 3) that was intended to be acted upon, 4) that was relied upon, and 5) that caused injury. Hubbard v. Shankle, 138 S.W. 3d 474, 482-83 (Tex. Ct. App. 2004).

Case 01-10779-sh7    Doc 3289    Filed 09/25/06    Entered 09/25/06 13:54:26 Page 3 of 16

that it had previously done any business with Furr's before the Agreement.

In its Application, Amplex seeks payment of the $122,400 plus interest and attorneys fees and costs. Amplex relies on several theories: 1) as damages for breach of the consignment agreements and misappropriation of consigned goods; 2) as a priority administrative expense under §§ 503(a)[6] and 507(b)(1)[7] [sic, probably 507(a)(1)[8]]; 3) as an administrative claim under § 503(b)[9]; 4) as an administrative expense under § 364(b)[10]; 5) as

---

[6] Section 503(a) states "An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause."

[7] There is no section 507(b)(1).

[8] Section 507(a)(1) states " (a) The following expenses and claims have priority in the following order:
(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28."

[9] Section 503(b) provides, in relevant part:
After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including--
(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case; ...

[10] Section 364(b) states: "The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense."

Case 01-10779-sh7    Doc 3289    Filed 09/25/06    Entered 09/25/06 13:54:26    Page 4 of 16

an administrative priority under § 507(b)[11]; 6) as a superpriority expense of administration under § 105[12] because the stamps were fraudulently converted; and/or 7) trust theories.

ADMINISTRATIVE CLAIM

Administrative claims allowed under Section 503(b) are given priority by Sections 507(a)(1) and 726(a)(1). <u>Isaac v. Temex Energy, Inc. (In re Amarex, Inc.)</u>, 853 F.2d 1526, 1530 (10th Cir. 1988). This treatment is only available for claims that arise against the estate after the filing of the bankruptcy petition[13].

---

[11]Section 507(b) states:
If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

[12]Section 105(a) provides:
The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

[13]   [A]n expense is administrative only if it
       arises out of a transaction between the
                                               (continued...)

Page -5-

Case 01-10779-sh7    Doc 3289    Filed 09/25/06    Entered 09/25/06 13:54:26 Page 5 of 16

The policy behind priority treatment of certain post-petition claims is to encourage creditors to extend credit post-petition in order to increase the likelihood of a successful reorganization, which would benefit all creditors. Bachman v. Commercial Financial Services, Inc. (In re Commercial Financial Services, Inc.), 246 F.3d 1291, 1293 (10th Cir. 2001). Giving special treatment to one class of creditors goes against a fundamental policy underlying bankruptcy, that of equal distributions to creditors. Id. (quoting Amarex, 853 F.2d at 1530). Therefore, priorities are narrowly construed. Id.; Amarex, 853 F.2d at 1530. The party claiming that an expense has administrative priority has the burden of proving it. General American Transportation Corp. V. Martin (In re Mid Region Petroleum, Inc.), 1 F.3d 1130, 1132 (10th Cir. 1993); Amarex, 853 F.2d at 1530. To prevail on an administrative claim, the

---

[13](...continued)
creditor and the bankrupt's trustee or debtor in possession (citations omitted) and "only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." A debt is not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate. Trustees of Amalgamated Ins. Fund v. McFarlin's, 789 F.2d 98, 101 (2d Cir. 1986) (quoting In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976))(citations omitted)
Amarex, 853 F.2d at 1530.

Case 01-10779-sh7    Doc 3289    Filed 09/25/06    Entered 09/25/06 13:54:26 Page 6 of 16

creditor must prove an actual benefit to the estate; potential benefit does not satisfy the requirement. <u>Mid Region Petroleum</u>, 1 F.3d at 1133.

Amplex also argued that under <u>Reading Co. v. Brown</u>, 391 U.S. 471 (1968) it should be entitled to an administrative claim for the disappearance of the stamps and cash during the course of the case. The Court disagrees. While it is true that in <u>Brown</u> the court awarded an administrative claim for negligence on the part of the receiver, the full amount of the claim was identifiable. In this case, Amplex cannot establish an amount for the claim.

Amplex's request for administrative treatment must fail because Amplex did not prove that the estate received a benefit from the stamps. It is most likely that the stamps were all gone by the end of January. In any event, there is no evidence of the value of stamps on hand on February 8, 2001. Therefore, there is no proof of the amount of the benefit. The administrative expense claim should be denied. <u>See also</u> <u>In re Dart Drug Stores, Inc.</u>, 144 B.R. 299, 304 (Bankr. D. Md. 1991)(Consignment creditor not entitled to administrative expense because it could not show the inventory as of the petition date.)

<u>SECTION 364(b)</u>

Amplex advanced no new credit after the bankruptcy was filed. Nor did Amplex give notice and request a hearing on its claim that stamps used post-petition should be afforded

Page -7-

Case 01-10779-sh7    Doc 3289    Filed 09/25/06    Entered 09/25/06 13:54:26    Page 7 of 16

administrative priority treatment. Amplex provided no proof of the amount of collateral that was used after the petition, so it is impossible to determine the amount of a Section 364(b) claim even if it were allowable.

SECTION 507(b)

Section 507(b) does not apply because the Trustee did not have an adequate protection agreement with Amplex. Amplex provided no proof of the amount of collateral that was used after the petition, so it is impossible to determine the amount of a Section 507(b) claim even if it were allowable.

SECTION 105

> [I]t should be universally recognized that the power granted to the bankruptcy courts under section 105 is not limitless and should not be employed as a panacea for all ills confronted in the bankruptcy case. Section 105 does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code or mandates of other state and federal statutes. Collier, supra at 105-5. See also In re Hoffman Bros. Packing Co., Inc., 173 B.R. 177 (9th Cir. BAP 1994) ( " Section 105 must in all cases be carefully construed so as to implement and fit the specific provisions of the Bankruptcy Code" ); In re Barney's Inc., 197 B.R. 431, 438 (Bankr. S.D. N.Y. 1996) (section "105(a) cannot create substantive rights not otherwise found in the Bankruptcy Code" ); In re First RepublicBank Corp., 95 B.R. 58, 60 (Bankr. N.D. Tex. 1988) ( "court may not invoke § 105(a) to create substantive rights that are not provided by the Code" ); In re Gates Engineering Co., 104 B.R. 653 (Bankr. D. Del. 1989) ( "However, the court cannot under the provisions of § 105 circumvent the unambiguous language of [ section 1102] in light of the deletion of subsection (c) in 1986." )

In re New Life Fellowship, Inc., 202 B.R. 994, 997 (Bankr. W.D. Okl. 1996). The Bankruptcy Code regarding administrative expense

treatment and the Tenth Circuit Court of Appeals' cases interpreting it are clear. There is a "benefit to the estate rule" that limits administrative expenses to those that benefit the bankruptcy estate, not the pre-petition debtor. The Court cannot use Section 105 to circumvent this rule. Furthermore, it would not be equitable to pay Amplex with funds that would otherwise go to administrative creditors or possibly first priority wage claimants who are innocent of any wrongdoing with respect to Amplex's collateral. This is not meant to condone the actions of the Debtor in this case. It is clear that, to the extent there may have been stamps or proceeds on hand on the petition date, Furr's violated the Bankruptcy Code's cash collateral provisions by using proceeds from the stamps. But the proper remedy, if there is one, should not punish the unsecured creditors.

**<u>TRUST</u>**

> Just as medieval alchemists bent all their energies to
> discovering a formula that would transmute dross into
> gold, so too do modern creditors' lawyers spend
> prodigious amounts of time and effort seeking to
> convert their clients' general, unsecured claims
> against a bankrupt debtor into something more
> substantial. ... Under our Bankruptcy Code, such
> sorcery demands the highest attention to the
> requirements of pleading and proof by its practitioner.

<u>Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co., Inc.)</u>, 12 F.3d 426, 431 (5th Cir. 1994). In this passage, the Fifth Circuit Court of Appeals was referring to trust claims made in

bankruptcy proceedings.  Under Bankruptcy Code Section 541(a)(1) the filing of a bankruptcy petition creates an estate comprised of all legal or equitable interests of the debtor in property as of the commencement of the case wherever located and by whomever held.  An exception to this broadly encompassing estate is found in Section 541(d), which provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Therefore, if a debtor holds property as a trustee only the debtor's bare legal title passes to the bankruptcy estate.  This means that if a creditor can establish that a claim is really an amount held in trust for his or her benefit, the creditor in effect gets paid in full ahead of the debtor's creditors outside of the bankruptcy process.

Amplex claims that it is the beneficiary of either an express trust created by the Agreement or a constructive trust that arose from Furr's violation of the Agreement.  Each will be addressed in turn.

EXPRESS TRUST

There are 3 elements to a trust: 1) a trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; 2) a beneficiary, to whom the trustee owes equitable duties to deal with the trust property for his benefit; and 3) trust property, which is held by the trustee for the beneficiary. Restatement (2nd) of Trusts § 2 cmt. h. Texas law is the same. City of Wichita Falls v. Kemp Public Library Board of Trustees, 593 S.W.2d 834, 836 (Tex. Ct. App. 1980). In addition, Texas requires a stated intention of the grantor to create a trust. Id. If any of the elements are vague, general or equivocal, the trust fails for want of certainty. Id. If language in a document purporting to create a trust does not clearly show an intention to create a trust, both the language of the instrument and all the circumstances surrounding it must be considered to determine whether a trust was intended. Gonzales v. Gonzales, 457 S.W.2d 440, 447-448 (Tex. Ct. App. 1970). It is the intention of the settlor at the time of the creation of the trust that is determinative. Coffee v. William Marsh Rice University, 408 S.W.2d 269, 273 (Tex. Ct. App. 1966).

"A debt is not a trust." Restatement (2nd) of Trusts § 12; Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663, 675 (Tex. Ct. App. 1996)("A relationship between a borrower and lender is usually neither a fiduciary relationship nor a special relationship."); Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex.

1962)(In a debtor/creditor relationship no fiduciary relationship arises.) The intention of the parties to create a debt versus a trust is ascertained by a consideration of their words and conduct in light of all the circumstances. Restatement (2nd) of Trusts § 12 cmt. g.

> If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or the third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.

Id.

The Agreement does not clearly state an intention to create a trust. The document evidences an intent for Amplex to provide stamps to Furr's on 30 day terms, with payments being directed to the USPS[14]. To secure payment, Amplex had a security interest in the stamps being sold and their proceeds. The Agreement does not impose fiduciary-like duties on Furr's. For example, Furr's had no duty to account on a regular basis, had no duty to segregate proceeds unless a default were declared and Amplex required such segregation, had no duty to protect the property (Furr's was fully liable for any losses, however) and had no duty to make the property generate income. The Agreement also does not impose a duty of utmost good faith, trust, confidence, and candor (such as

---

[14]Amplex testified that under its agreement with the USPS any amounts not paid by its "consignees" were guaranteed by Amplex.

Case 01-10779-sh7    Doc 3289    Filed 09/25/06    Entered 09/25/06 13:54:26    Page 12 of 16

a lawyer or corporate officer) to the beneficiary (such as a lawyer's client or a shareholder) or a duty to act with the highest degree of honesty and loyalty toward another person and in the best interests of the other person (such as the duty that one partner owes to another). The intent of the Agreement is to create a secured transaction under the Uniform Commercial Code. Therefore, the Court finds that there was no express trust created by the Agreement.

The Court garners further support for this finding by examining the difference between contract actions and tort actions. Failure to pay a debt is a breach of contract. <u>See, e.g.</u>, <u>Mead v. Johnson Group, Inc.</u>, 615 S.W.2d 685, 686 (Tex. 1981). Willful breach of a fiduciary duty is a tort. <u>See, e.g. Lesikar v. Rappeport</u>, 33 S.W.3d 282, 311 (Tex. Ct. App. 2000).

> Although the principles of tort and contract causes of action are well settled, it is often difficult to determine the type of action that is brought. To do so we look to the substance of the cause of action rather than the manner in which it was pleaded.
> Tort obligations are those imposed by law when a person breaches a duty which is independent from promises made between the parties to a contract; contractual obligations are those that result from an agreement between parties, which is breached. If the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. If the defendant's conduct would give rise to liability independently of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort.
> In determining whether the plaintiff may recover on tort as well as contract, it is also helpful to

Case 01-10779-sh7    Doc 3289    Filed 09/25/06    Entered 09/25/06 13:54:26 Page 13 of 16

> examine the nature of the plaintiff's loss. When the
> only loss or damage is the subject matter of the
> contract, the plaintiff's action is ordinarily on the
> contract. When the loss or damage is not the subject
> of the contract, the plaintiff's action is one in tort.

Farah, 927 S.W.2d at 674 (Citations omitted.)

Amplex's damages in this case result from Furr's failure to pay according to the contract. Amplex suffered no damages not covered by or anticipated by the contract. Amplex has a contract action, not an action for breach of fiduciary duty. Therefore, there was no express trust, just a contract.

CONSTRUCTIVE TRUST

> Under Texas law, a constructive trust "is an
> equitable remedy created by the courts to prevent
> unjust enrichment." Unlike trusts usually encountered
> under conventional trust doctrine, constructive trusts
> are not created by an express agreement. Rather, a
> constructive trust is an equitable device "imposed by
> law because the person holding the title to property
> would profit by a wrong or would be unjustly enriched
> if he were permitted to keep the property."
> Where, as here, there is no formal trust in the
> traditional sense nor any special legal relationship
> between the parties, Texas courts generally require the
> following three elements before applying the equitable
> remedy of a constructive trust:
>> (1) Breach of an informal relationship of special
>> trust or confidence arising prior to and apart
>> from the transaction in question, or actual
>> fraud.;
>> (2) Unjust enrichment of the wrongdoer.; and
>> (3) Tracing to an identifiable res.

Monnig's Department Stores, Inc. v. Azad Oriental Rugs, Inc. (In re Monnig's Department Stores, Inc.), 929 F.2d 197, 201 (5th Cir. 1991)(Citations omitted). See also Hubbard v. Shankle, 138 S.W.3d 474, 485 (Tex. Ct. App. 2004)(The elements of a

Case 01-10779-sh7    Doc 3289    Filed 09/25/06    Entered 09/25/06 13:54:26    Page 14 of 16

constructive trust are 1) breach of a special trust, fiduciary relationship, or actual fraud; 2) unjust enrichment; and 3) tracing an identifiable res.)

> In recognizing a constructive trust, the critical requirement for purposes of this case is that the parties have a confidential or fiduciary relationship <u>prior to and apart from the transaction in question</u>. This relationship may be established through prior joint business ventures, or other types of close, confidence-inducing relationships. It need not arise from a strict, formal fiduciary relationship. However, mere subjective confidence among business associates or the like is insufficient to support a constructive trust.

<u>Monnig's</u> at 201-02 (<u>quoting</u> <u>Harris v. Sentry Title Co., Inc.</u>, 715 F.2d 941 (5th Cir. 1983), <u>modified on other grounds</u>, 727 F.2d 1368 (5th Cir. 1984), <u>cert. denied sub nom.</u> <u>Ward v. Sentry Title Co.</u>, 469 U.S. 1037 (1984))(Emphasis added by <u>Monnig's</u> court)(Citations omitted). <u>See also</u> <u>Hubbard</u>, 138 S.W.3d at 483 ("In other words, there must be a preexisting special relationship of trust and confidence that is betrayed in later dealings."); <u>Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.</u>, 48 S.W.3d 865, 880 (Tex. Ct. App. 2001)("To impose an informal fiduciary duty in a business transaction, the requisite special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit.")(Citations omitted.)

As noted above, Amplex introduced no evidence at trial of actual fraud. Likewise, Amplex introduced no evidence of any

Case 01-10779-sh7    Doc 3289    Filed 09/25/06    Entered 09/25/06 13:54:26    Page 15 of 16

relationship between Amplex and Furr's prior to the Agreement. Therefore, Amplex has not met its burden of proof to establish a constructive trust. The Court does not need to address whether Furr's was unjustly enriched, or whether Amplex needed to trace funds to identify a res.

The Court will enter an Order denying Amplex's Application.

/s/ James S. Starzynski
Honorable James S. Starzynski
United States Bankruptcy Judge

copies to:

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Shay E Meagle
PO Box 30707
Albuquerque, NM 87190-0707

David T Thuma
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309